UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

STEPHEN L. HALL,

    Plaintiff,

v.                                          Case No. 2:13-cv-239
                                                HON. GORDON J. QUIST

MICHAEL BAUERS, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

        Plaintiff Stephen L. Hall, an inmate currently confined at the Carson City Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Property Room Officer Unknown Bauers and Assistant Resident Unit Supervisor Unknown Niemi, both of whom were employed at the Chippewa Correctional Facility (URF) during the pertinent time period.

        Plaintiff's complaint alleges that on September 26, 2012, he was transferred from the Gus Harrison Correctional Facility to URF. On September 29, 2012, Plaintiff was sent to retrieve his property from Defendant Bauers. Defendant Bauers harassed Plaintiff over the fact that he owned a typewriter with memory, which was no longer available for purchase by prisoners. Defendant Bauers noticed Plaintiff's civil and criminal case documents and asked Plaintiff if he was a "legal beagle." Plaintiff asked Defendant Bauers why he was harassing him and Defendant Bauers stated, "Oh yeah, well I'm taking your fucking typewriter, now write your grievance." Plaintiff states that there was no damage to the typewriter and that this was evidenced by the personal

property receipt from the Gus Harrison Correctional Facility. Defendant Bauers gave Plaintiff a contraband removal slip, which failed to specify the reason for the confiscation. Plaintiff was not given a Notice of Intent (NOI) for an administrative hearing. Plaintiff asserts that at the top of the contraband removal slip form it states that staff will give a description and reason for the confiscation. Defendant Niemi allowed Defendant Bauers to place the typewriter in an administrative evidence hearings locker.

In October of 2012, Plaintiff asked Defendant Niemi about his property and Defendant Niemi responded that he was waiting on the NOI. Defendant Niemi told Plaintiff that when Defendant Bauers wrote the NOI, Plaintiff would receive a copy. Plaintiff states that he asked Defendant Niemi about the NOI at least three more times during October of 2012, to no avail. In early November of 2012, Plaintiff told Defendant Niemi that he had prepared a written defense to the confiscation, showing that it was retaliatory. Defendant Niemi stated that he did not believe that and that Plaintiff would just have to wait until he received the NOI before a hearing could be held. Plaintiff contacted the property room and was told that his typewriter was evidence and was to be held until a hearing date.

Plaintiff claims that the confiscation of his typewriter prevented him from properly litigating his civil case, which was ultimately dismissed. Plaintiff contends that he suffers from "peripheral neuropathy" and arthritis in his hands, and that the typewriter makes it easier to prepare litigation and write letters. Plaintiff states that since the loss of his typewriter, he has had to rely on other inmates to prepare his legal documents / pleading, and that he has paid for these services by using his indigent stipend or by selling his meals. Plaintiff recently received a medical accommodation from the MDOC for a communications assistant to write on his behalf because of his inability to write for himself.

In mid-November 2012, Plaintiff was transferred from URF. Plaintiff never received an NOI or an administrative hearing on his property. Plaintiff contends that Defendants Niemi and Bauers knew that they were essentially stealing his typewriter.

Plaintiff claims that Defendants conspired to deprive him of his typewriter in retaliation for his litigation activities in violation of the First and Fourteenth Amendments. Plaintiff also claims that this conduct violated his state law rights. Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.

Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.*

at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants assert that they are entitled to summary judgment on Plaintiff's retaliation claims because their actions were not motivated by a desire to retaliate against Plaintiff for engaging in protected conduct. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In his admissions and answers to Plaintiff's interrogatories, Defendant Bauers states that the prisoner number on Plaintiff's typewriter had been altered. Defendant Bauers concedes that he should have noted that on the Contraband Removal Record, and states that his failure to do so was an oversight, not a purposeful omission. *See* docket #31-3, pp. 4-5 of 6, ¶ 6; docket #31-5, p. 5 of 8, ¶ 5. In Defendant Niemi's response to Plaintiff's discovery requests, he states that he does not recall conducting a hearing on Plaintiff's property because he is not sure that he received an NOI. Before conducting a hearing, an NOI would have needed to be reviewed by a staff member. *See* docket #31-6, pp. 3-5 of 8, ¶¶ 2-4.

Defendants concede that they do not have any records of an NOI being issued, nor do they recall issuing or seeing an NOI on Plaintiff's typewriter. However, Defendants assert that the lack of an NOI was due to an oversight by Defendant Bauers. However, Defendants assert that Plaintiff received reimbursement for the value of the typewriter from the State Administrative Board, as evidenced by a December 17, 2013, letter from the State Administrative Board, which is attached as an exhibit to Plaintiff's amended complaint. *See* docket #8-5.

In his response, Plaintiff reiterates that Defendant Bauers saw Plaintiff's typewriter and litigation materials and called him a legal beagle. After Plaintiff threatened to write a grievance, Defendant Bauers stated "I'm taking your FUCKING TYPEWRITER, now write your grievance." Plaintiff notes that Defendant Bauers failed to specify any reason for the confiscation on the contraband removal record and failed to issue an NOI, which deprived Plaintiff of a hearing on his property. Plaintiff states that the State Administrative Board looked at the record and found that Plaintiff was entitled to reimbursement for the loss of his typewriter. Finally, Plaintiff asserts that as Assistant Resident Unit Supervisor, Defendant Niemi was responsible for the things in the evidence locker and that he should have known that an NOI should have been issued and a hearing scheduled. In addition, Plaintiff states that Defendant Niemi should have known that the contraband removal slip was fatally defective because it did not contain a reason for the confiscation.

In the opinion of the undersigned, there is an issue of fact regarding whether Defendant Bauers' seizure of the typewriter was retaliatory. However, with regard to Defendant Niemi, the undersigned notes that liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S.

- 5 -

at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims

cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendant Niemi was personally involved in the activity which forms the basis of his claim. As stated above, Plaintiff merely claims that Defendant Niemi should have known that there was a problem with the confiscation. Defendant Niemi's only role in this action involved the failure to act. Defendant Niemi cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendant Niemi are properly dismissed for lack of personal involvement.

With regard to Plaintiff's claim that his transfer was retaliatory, Defendants contend that Plaintiff's transfer was not retaliatory because records show that Plaintiff was transferred so that he could attend an upcoming court appearance on January 28, 2103. A review of the transfer order, which is attached to Defendants' brief, states "Transfer to facilitate a Court Appearance (US District Court on 1/28/2013)." *See* docket #31-2. In the opinion of the undersigned, Plaintiff cannot show that his transfer was motivated by a desire to retaliate against him. Therefore, Defendants are entitled to summary judgment on this claim.

Plaintiff also claims that the confiscation of his typewriter violated his Fourteenth Amendment due process rights. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

Assuming that Plaintiff had a right implicating the due process protections of the Constitution, Plaintiff received due process of law. In all cases where a person stands to be deprived

of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986).

As noted above, Plaintiff alleges that his typewriter was improperly confiscated and that he was denied a hearing on this confiscation. Plaintiff subsequently filed a claim against the State of Michigan in accordance with State Administrative Board policy, asserting that he was improperly deprived of the typewriter. *See* docket #8-4. The Finance and Claims Committee considered Plaintiff's claim and approved a payment in the amount of $175.00 as payment for the loss of Plaintiff's property. Therefore, because Plaintiff received reimbursement for the loss of his property, his due process claim is properly dismissed.

Plaintiff also asserts a violation of his substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with

rights implicit in the concept of ordered liberty." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, the First Amendment provides an explicit textual source of constitutional protection for Plaintiff's retaliation claims. Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied. *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim."). Likewise, the Fourteenth Amendment Procedural Due Process Clause would apply to

protect Plaintiff's property interest in the confiscated typewriter. Consequently, Plaintiff's substantive due process claims will be dismissed.

Plaintiff also alleges that Defendants Bauers and Niemi engaged in a conspiracy to deprive him of his typewriter. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); Gutierrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir. 1987).

In his deposition, Plaintiff testified that he believed that there was a conspiracy because Defendant Niemi, as Assistant Resident Unit Supervisor, possessed the keys to the evidence locker and was responsible for conducting administrative hearings. *See* docket #31-8, p. 4 of 4. However, Plaintiff concedes that he never observed Defendants Bauers and Niemi discuss Plaintiff's typewriter. Nor does Plaintiff allege any other specific facts showing the existence of an agreement to deprive him of his typewriter. *Id.* at p. 3 of 4.

Plaintiff's allegations of conspiracy are conclusory and speculative. Plaintiff has provided no allegations establishing any agreement between Defendants. He relies entirely on a

highly attenuated inference from the mere fact that Defendant Niemi was the Assistant Resident Unit Supervisor and controlled the evidence locker and was responsible for conducting hearings. The Supreme Court has recognized that factual allegations are insufficient to state a claim where the conduct at issue "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. The undersigned concludes that Plaintiff fails to state a plausible claim of conspiracy.

To the extent that Plaintiff is claiming his state law rights were violated, Defendants contend that the court should refuse to exercise pendent jurisdiction over such claims. Claims raising issues of state law are best left to determination by the state courts, particularly in the area of prison administration. In addition, pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966); *Moon v. Harrison Piping Supply, et al.*, 465 F.3d 719 (6th Cir. Sep. 28, 2006); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915, 112 S.Ct. 1954 (1992).

> That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966). For the reasons stated above, the undersigned recommends that the court refuse to exercise pendant jurisdiction over Plaintiff's state law claims.

Defendants also contend that Plaintiff's individual capacity claims are barred by qualified immunity because Plaintiff has failed to show a violation of clearly established law. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As noted above, Defendant Niemi did not violate Plaintiff's constitutional rights. Accordingly, Defendant Niemi is entitled to qualified immunity. However, because there is an issue of fact with regard to whether Defendant Bauers improperly confiscated Plaintiff's

typewriter in order to retaliate against him for his litigation activities, Defendant Bauers is not entitled to qualified immunity on this claim.

In summary, it is recommended that Defendants' Motion for Summary Judgment (Docket #39) be granted with regard to all claims except for Plaintiff's claim that Defendant Bauers retaliated against him by confiscating his typewriter.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   February 3, 2015